432 P.2d 283

Margaret M. BONNIN, Legal Guardian of the Estates and Persons of Wayne Alexander Milliman, and Hollis Gordon Milliman, Also known as Hollis Gordon Rodriquez, Minor Children, Petitioners,

v.

The INDUSTRIAL COMMISSION of Arizona, and The Ashton Company, Inc., Respondent Insurance Carrier and Respondent Employer.

No. 1 CA–IC 144.

Court of Appeals of Arizona.

Oct. 9, 1967.

Silver, Silver, Ettinger & Karp, by Jack A. Ettinger and Eugene Karp, Tucson, for petitioners.

Robert K. Park, Chief Counsel, by Noel J. R. Levy, Phoenix, for respondents.

STEVENS, Judge.

The matter which is presented to this Court, in relation to the review of the Award entered by the Industrial Commission of Arizona allowing death benefits to the minor children named in the caption of this opinion, concerns the proper interpretation of the Arizona Statutes as to the percentage of deceased's income which should be awarded to minor children where there is a living potential beneficiary in a preferred classification who could have taken but did not take. The Industrial Commission awarded each child 15%, or a total of 30%, whereas the petitioners urge that there should have been an award of 25% for one child and 15% for the other, or a total of 40%.

Willard J. Milliman met his death in an industrial accident on 2 March 1961 under circumstances authorizing the payment of death benefits. He was survived by his widow and six minor children all of whom lived in the State of New York. He was further survived by a person with whom he had entered into a ceremonial marriage and her two children, the minor petitioners herein. One of the minor petitioners was the stepchild of Milliman and the other, the natural child of Milliman. Both of these children were living with Milliman at the

time of his death. The claims of the minor petitioners are processed by their legal guardian, their maternal grandmother. A more detailed statement of the family history may be found in the reported decision of In the Matter of the Estate of Milliman, Deceased, 101 Ariz. 54, 415 P.2d 877 (1966). It is the opinion of the Court that further recitation of the family history is not essential to this opinion.

The Chief Counsel for the Industrial Commission of Arizona prepared an excellent and comprehensive resume of the record, the facts and the legal problems, presenting the same to the Commission. The Industrial Commission entered a comprehensive Finding and Award, all of which have been a great aid to this Court in connection with the problems now under consideration.

A.R.S. Section 23–1061, subsec. D requires that claims for compensation be filed within one year after the date upon which the injury occurred. The case of Weaver v. Martori, 69 Ariz. 45, 208 P.2d 652 (1949), discusses the exceptions to this requirement which exceptions include minors under certain circumstances. The surviving widow had knowledge of the death shortly after the death occurred and her claim was not filed within the one year period.

The statutes which we are called upon to construe are A.R.S. Sections 23–1046 and 23–1064. Portions of these statutes are set forth as follows:

"§ 23–1046. Death benefits

"A. In the case of an injury causing death, the compensation therefor shall be known as a death benefit, and shall be payable in the amount, for the period, and to and for the benefit of the persons following:

"1. Burial expenses, not to exceed three hundred dollars, in addition to the compensation.

"2. To the widow, if there is no child, thirty-five per cent of the average wage of the deceased, to be paid until her death

or remarriage, with two years compensation in one sum upon remarriage.

"3. To the widower, if there is no child, thirty-five per cent of the average wage of the deceased, if wholly dependent for support upon the deceased employee at the time of her death, to be paid until his death or remarriage.

"4. To the widow or widower, if there is a child or children, the additional amount of fifteen per cent of such wage for each child until the age of eighteen years, the total not to exceed sixty-six and two-thirds per cent of the average wage.

"5. To a single surviving child, in the case of the subsequent death of a surviving wife, or a dependent husband, or if there is no surviving wife or dependent husband, twenty-five per cent of such average wages, or if there is more than one surviving child, twenty-five per cent for one child, and fifteen per cent for each additional child, to be divided among such children share and share alike, but not exceeding a total of sixty-six and two-thirds per cent of the average wage. Compensation to any such child shall cease upon death, marriage or upon reaching the age of eighteen years, except, if over eighteen years and incapable of self-support, when it becomes capable of self-support.

"§ 23–1064. Presumptions of dependency; determination

"A. The following persons are conclusively presumed to be totally dependent for support upon a deceased employee:

\* \* \* \* \* \*

"3. A natural, posthumous or adopted child under the age of eighteen years, or over that age if physically or mentally incapacitated from wage earning, upon the parent with whom it was living at the time of the injury, there being no surviving parent. Stepparents may be regarded as parents, if dependent, and a stepchild as a natural child if dependent.

\* \* \* . \* . \* \*

"\* \* \* death benefits shall be directly recoverable by and payable to the dependent entitled thereto."

Section 23–1064 was amended in the year 1961, the amendment being effective after the date of Milliman's death, which amendment appears to eliminate the requirement that the minor child must be living with the deceased at the time of the injury.

It is sufficient for the purpose of this record to state that that portion of the award which denies death benefits to the surviving widow and to the six New York minor children and that portion of the award which denies death benefits to the surviving mother of the two minor children, who are the petitioners in this matter, has not been brought before us for review.

 It might be well to set forth a few principles of statutory interpretation. In Roberts v. Spray, 71 Ariz. 60, 223 P.2d 808 (1950), it is stated on page 69 of the Arizona Reports 223 P.2d on page 814:

"\* \* \* Questions as to the wisdom of the law, as to its expediency or concerning the soundness of policy outlined therein must be addressed to the legislature. \* \* \*"

In Ernst v. Collins, 81 Ariz. 178, 302 P.2d 941 (1956), it is stated on page 181 of the Arizona Reports, 302 P.2d on page 945:

"The cardinal rule of statutory interpretation is that the intent of the legislature must be ascertained and followed (citing cases). Where that intent appears in plain language, the courts cannot extend the mean (sic) so expressed; rather, they must observe the obvious and natural import of the words. (citing cases) Therefore, where as here the language is clear and unambiguous, rules of statutory construction are not employed, except to the extent as they are observed to reach this conclusion. \* \* \*"

In the case of English v. Industrial Commission, 73 Ariz. 86, 237 P.2d 815 (1951), it is stated on page 89 of the Arizona Reports, 237 P.2d on page 817:

"In determining this case there are certain fundamental principles that must be kept in mind. The Workmen's Compensation Act was enacted to protect the workman and to relieve society of the burden caused by industrial accidents. Industry is chargeable with and must bear the burden of the loss by injury and death to the human machine. (citing cases) It has been repeatedly held that the Act should receive a liberal interpretation in favor of the employee. Where there is a doubt as to the construction, that construction should be adopted which will best effect its purpose of compensating the injured employee for his loss of earning power. (citing cases) The commission cannot deal at arm's length with the insured. \* \* \*"

In Goodyear Aircraft Corporation v. Industrial Commission, 62 Ariz. 398, 158 P.2d 511 (1945), it is stated on page 402 and 404 of the Arizona Reports, 158 P.2d on page 513:

"The purpose and intent of the law must be given effect, but due regard must also be had as to the respective rights of employer and employee. A burden or liability not within the terms or spirit of the law is not to be imposed upon industry. On the other hand, the act must be construed liberally to effect its purposes and to provide compensation for workers who suffer injury from accidents arising out of and in the course of their employment. No rule is to be adopted and applied which will make ineffectual the evident purpose of the law that those covered by the act who are injured while engaged in industrial work are to be compensated. When a machine is broken it must be repaired.

"When an appliance is worn out it must be renewed. When, through accident arising out of the course of his employment, a worker is injured, he should be allowed due compensation, and the cost for such compensation is a charge against industry to the same extent as repair to a broken machine. \* \* \*"

"On the contrary, if we entertain a serious doubt we shall feel it our duty not to hesitate to apply a liberal rule of construction in favor of the claimant."

The Workmen's Compensation Act was adopted by the Arizona Legislature in the year 1925 and is found in Chapter 83 of the laws of that year. This chapter will hereinafter be referred to as "the act". Section 70 of the act contains the enumeration of death benefits and is now A.R.S. Section 23–1046. Section 72 of the act relates to presumption of dependency and is now found in A.R.S. Section 23–1064. These original sections were carried forward with some modification not material to this opinion.

The first case to reach the Arizona Supreme Court after the act became effective, was the case of Federal Mutual Liability Insurance Company v. Industrial Commission, 31 Ariz. 224, 252 P. 512 (1926), the subject matter being the claim of partially dependent parents of a deceased workman. Section 70 of the act is quoted in its entirety. As in our present section, the right of dependent parents to receive death benefits is deferred in favor of others with a greater statutory priority. In discussing the sequence of priority, the court states on page 232 of the Arizona Reports, 252 P. on page 514:

* * * "The fourth states that payments shall be made to the surviving parent for the benefit of the minor children of the deceased, and then provides for practically every conceivable situation which could arise with such children. * * *"

We note that the court stated that the statute provided for "practically every conceivable situation" and it is our opinion that the problem facing us in connection with the interpretation of this statute is one of those which is not expressly spelled out in the statute. It is our opinion that the above statement to the effect "that payments shall be made to the surviving parent for the benefit of the minor children" is purely illustrative and should not be taken as a definitive statement although in most instances the statement would be completely applicable. In our opinion the matter before us is an illustration of this observation. We further observe that the statute uses the term "widow" or "widower" in lieu of the term "parent".

The court further discussed the principle of statutory interpretation in the following language on page 233 of the Arizona Reports, 252 P. on page 515:

"In interpreting the meaning of an ambiguous provision of a statute, there are several canons of construction. The first and the cardinal one is, of course, the intent of the Legislature. It is obvious from both the history and language, not only of the act, but of the constitutional amendment (see Laws 1922, chapter 82), which made it possible, that its effect (and, we might also say, its chief purpose), was to make all benefits as definite and specific as possible, and leave to the discretion of the commission and the courts only those things which in their nature could not be determined in advance."

A subsequent opinion in relation to the same subject matter is the case of Federal Mutual Liability Insurance Company v. Industrial Commission, 32 Ariz. 293, 257 P. 982 (1927). On page 296, 257 P. on page 984, the court states:

"On examining the act as a whole there are certain features which stand out prominently therein. First, it is highly remedial in its character, and is intended to be construed liberally for the benefit of those coming under its protection. * * *"

On page 297, 257 P. on page 984, the court further states:

"It further appears that Section 70, in dealing with the different classes of dependents, does not carry over a class from one subdivision into another anywhere in express terms, but deals with it entirely in the one subdivision. Since it does not carry any class over expressly, it seems to us the ordinary rule of

logical construction would be that it did not do so impliedly. * * *"

We do not understand this last statement to hold that there is a total absence of any inter-relationship between the various subsections of Section 23-1046. It appears to us that a reading of subsections 4 and 5, each in turn requires that the same be construed in conjunction with the preceding subsections. The court in the later case of Ocean Accident and Guarantee Corporation, Limited v. Industrial Commission, 32 Ariz. 54, 255 P. 598 (1927), recognizes the inter-relationship between A.R.S. Section 23-1064 and A.R.S. Section 23-1046. The last cited case is the first of two cases between the same parties in relation to the right of a widow and a child to receive death benefits. At the time of the death of the workman, the child lived with her mother and not with her father who was the injured employee. It was urged that the child was not entitled to take. The right of the child to take was established by a later case, Ocean Accident & Guarantee Corporation, Limited v. Industrial Commission, 34 Ariz. 175, 269 P. 77 (1928).

The case of Ulbrich v. Tovrea Packing Co., 49 Ariz. 269, 66 P.2d 235 (1937), involved the claims of a divorced wife and a minor child. The decree of divorce was silent as to alimony and as to child support. The evidence established a verbal agreement pursuant to which the ex-husband was to pay both alimony and child support, which agreement he faithfully observed until the time of his death. The matter of statutory priorities came into play. The court upheld the award for the child thereby excluding the consideration of the possibility of an award for the "dependent" ex-wife for the reason that her claim, if any, fell into a later category. In reaching this conclusion, the court stated on page 273, 66 P.2d on page 237:

"* * * [S]ince there could be no widow after the divorce, all other possible dependents were excluded, the various subdivisions of the paragraph enumerating the classes entitled to death benefits being exclusive and not cumulative, that is, those mentioned in one class do not carry over into another. If there be, first, a widow, she is entitled to 35% of the average wage of the deceased, and when there are children under eighteen years of age, 15% additional for each child up to 66⅔% of the deceased's wages, and all others are excluded; if there be, second, a dependent husband with or without children, he takes the same as the widow, and all others are excluded; if there be, third, a child under eighteen years of age, but no surviving wife or dependent husband, there shall be paid 25% and 15% for each additional child up to 66⅔% of the deceased's average wages, and all others are excluded * * *"

This statement was followed by a discussion of the statute on page 274, 66 P.2d on page 237:

"There can be no question, therefore, but that by the language, for instance, 'If there be no surviving wife (or dependent husband) or child under the age of eighteen years, there shall be paid to a parent,' etc. (subdivision 6), the legislature intended to provide that no parent may be paid death benefits when there is a widow, a child or dependent widower of the deceased *entitled* to them also * * *" (Emphasis supplied)

It is urged that in the case before us there being a surviving widow even though she is not entitled to death benefits, no dependent child can receive in excess of 15%. This contention will be answered later.

The case of Magma Copper Company v. Naglich, 60 Ariz. 43, 131 P.2d 357 (1942), establishes that "under the statute the question of dependency is irrevocably fixed as of the date of the injury, and not the date of the death", so that a child conceived after the date of the accident which later resulted in the death of the employee, was not entitled to take.

It would appear that the six minor children, residents of the State of New York, who had received no support from

their father for several years, did not attempt to seek a review of the award which denied them death benefits in the light of A.R.S. Section 23–1046 as it existed as of the date of the death and the case of Thomas v. Industrial Commission, 87 Ariz. 238, 350 P.2d 392 (1960).

The respondent Commission urges that this Court should follow the principles set forth by the Supreme Court of Oklahoma in the case of H. L. Maness Truck Lines v. Lemmons, 408 P.2d 288 (Okla.1965) wherein the court on page 292 of the Pacific Reporter states:

"Dependency is not an issue, as has been heretofore demonstrated; however, claimants cite no statute of the State of Oklahoma, or any other authority, that where a deceased employee leaves surviving him a widow and the "widow fails to make a claim for compensation under the death benefit provisions of the Workmen's Compensation Act, and there are no children to make a claim, that the next of kin are entitled to a beneficial interest which they could not acquire had the legal beneficiary chosen to present her claim regardless of how 'dependent' the next of kin had been of deceased."

The Petitioners urge that the principles set forth in Zachery v. Royal Indemnity Co., 80 Ga.App. 659, 56 S.E.2d 812 (1949) apply. We quote from page 815 of the South Eastern Reporter:

"A widow who has not deserted or abandoned her husband is conclusively presumed totally dependent, and is therefore eligible for an award, so far as dependency is concerned. This right becomes fixed as of the time of the accident. (citing cases) Whether she is entitled to the award, however, depends not alone upon status and dependency, but upon enforcement of the right in the manner provided by law, and includes as a condition precedent the filing of a claim within one year of the death * * *. Unless she does this, her claim is forever barred. On the other hand, the liability of the employer becomes fixed upon the death of the employee, and he is bound to pay the death benefits under the act, providing it is made to appear that the death arose under circumstances held to be compensable, that he was subject to the provisions of the act, and that a valid claim was filed within the period of limitation on behalf of one entitled to compensation under the terms of the law. * * * Even these cases are not directly in point with the case at bar, but an examination of 105 A.L.R., Anno. p. 1232, et seq. discloses that Workmen's Compensation Acts throughout this country are generally construed liberally in favor of those classes of beneficiaries who are secondarily entitled to recover compensation in the absence of a claim interposed in behalf of primary beneficiaries. * * *

*"We must therefore hold that while the fact of dependency is determined as of the time of accident, the fact of eligibility must be determined as of the date of hearing.* * * * The widow here at the time of the hearing, through her waiver of her rights, had become ineligible for compensation. The liability of the employer and carrier had become fixed at the time of the death of the employee to pay the compensation to *the claimant next in line for benefits* and who was otherwise eligible to receive the same, in this case the mother claimant." (Emphasis supplied)

In the matter we have under consideration, the widow was not the mother of the two dependent children who were living with Milliman at the time of his death and who were entitled to death benefits under the statute. The widow filed no claim within the one year period and no appeal has been processed from the award which denied death benefits to her. The mother of the two children received no death benefits. A strained construction of Section 23–1046 would seem to provide that where there is a widow who would be eligible to take and who does not take, then the chil-

dren who would be eligible to take if the widow took, would be excluded. Another strained construction would seem to provide that if there is a widow who does not take and there are children who do take, then under subsection 4 of Section 23–1046, the money would be required to be paid to the widow even though she is not the mother of the children who take and even though they do not live with her. Such a conclusion would negative the following language found in Section 23–1064, subsec. B, namely that "the death benefits shall be directly recoverable by and payable to the dependent entitled thereto".

 Bearing in mind the intent of this remedial legislation, and reading the two quoted sections together, the only conclusion which we can reach is that there being a death under circumstances which, under the law, creates an entitlement to death benefits, if one of the preferred class fails to perfect his or her rights, then the members of that class next in preference are entitled to the maximum statutory benefits as though the preferred class member did not survive. We hold that the two children were not entitled to 15% each or a total of 30%, but were entitled to 25% and 15% divided share and share alike, payable to their guardian.

The Award is set aside.

CAMERON, C. J., and DONOFRIO, J., concur.